**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MABENDU KAMARA,<br><br>     Plaintiff,<br><br>     v.<br><br>WAYFAIR, LLC,<br><br>     Defendant. | Civil Action No. 21-1400 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on Defendant Wayfair, LLC's ("Wayfair") Motion to Dismiss Plaintiff Mabendu Kamara's ("Kamara") Amended Complaint. (ECF No. 13.) Kamara opposed (ECF No. 14), and Defendant replied (ECF No. 15). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Defendant's Motion.

**I. BACKGROUND**[1]

  This case concerns alleged sex-, race-, and pregnancy-based discrimination Kamara faced at one of Wayfair's warehouses. The Court limits this background to Kamara's theory of pregnancy-based discrimination and harassment, as Wayfair moves to dismiss that theory only. (*See* Def.'s Moving Br. 4, ECF No. 13-1; Def.'s Reply Br. 2 n.1, ECF No. 15.)

---

[1] The Court accepts as true and summarizes the facts alleged in the Amended Complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

In October 2018, Wayfair hired Kamara to work in outbound shipping at its warehouse in Cranbury, New Jersey. (Am. Compl. ¶¶ 19-20, ECF No. 11.) Four months later, Kamara informed Wayfair that she was pregnant and requested an accommodation to work only on light-duty tasks. (*Id.* ¶¶ 37-38.) Wayfair approved that request. (*Id.* ¶ 40.)

Kamara's Amended Complaint alleges several instances of harassment following her disclosure of her pregnancy to Wayfair. The Amended Complaint first alleges that Wayfair passed Kamara up for a promotion. Specifically, shortly after informing Wayfair of her pregnancy, Kamara discovered that Wayfair promoted one of her coworkers, Andrew Haymen ("Haymen"),[2] to become her immediate supervisor. (*Id.* ¶ 41.) Kamara's Amended Complaint alleges that although she was both interested in and qualified for the supervisory position, Wayfair neither posted nor gave her an opportunity to apply for it. (*Id.* ¶¶ 43-45, 48.)

The Amended Complaint also alleges that, shortly after Haymen's promotion, Wayfair revoked Kamara's light-duty accommodation and attempted to prevent her from taking pregnancy-related breaks. (*Id.* ¶¶ 51, 55.) Regarding the former, according to Kamara, Wayfair informed her that Haymen made the revocation decision and did not explain why it revoked the accommodation. (*Id.* ¶¶ 52-53.) In addition, the Amended Complaint alleges that other employees "who required accommodations were not denied the same without legitimate explanation." (*Id.* ¶ 54.) Regarding the latter, Kamara's Amended Complaint alleges that Haymen "gave [Kamara] a difficult time" about taking pregnancy-related breaks—behavior Haymen did not exhibit toward other employees. (*Id.* ¶¶ 55-56.)

---

[2] Although not immediately relevant, the Amended Complaint contains several allegations that Haymen may have harassed Kamara by groping her and directing sexually suggestive and racially insensitive comments toward her. (*See, e.g., id.* ¶ 22(a)-(e).)

The alleged discrimination did not stop there: following Haymen's promotion, write-ups ensued. The Amended Complaint alleges that Wayfair first wrote up Kamara in April 2019 for "unfounded" attendance violations. (*Id.* ¶¶ 61-62, 66.) After Kamara complained to human resources about the baseless write-up, Wayfair wrote up Kamara again for attendance violations. (*Id.* ¶¶ 64-66.) Following these write-ups, Kamara continued to complain to Wayfair management about the ongoing harassment and that Wayfair "did not take any steps to investigate or remedy [Kamara's] complaints." (*Id.* ¶¶ 69-70.) Ultimately, Wayfair fired Kamara on May 6, 2019, citing "lateness from more than a week earlier, which had not been brought to [Kamara's] attention previously." (*Id.* ¶¶ 71, 73.)

Based on this alleged treatment, Kamara sued Wayfair in January 2021.[3] The Amended Complaint alleges three causes of action: (1) violations under Title VII of the Civil Rights Act for sex-, race-, and pregnancy-based discrimination (Count I), (2) violations under 42 U.S.C. § 1981 for race-based discrimination (Count II), and (3) violations under New Jersey's Law Against Discrimination ("NJ LAD") for sex-, race-, and pregnancy-based discrimination (Count III). (*See generally* Am. Compl.) In response, Wayfair filed the instant Motion. Although styled as a motion to dismiss in full, Wayfair's Motion narrowly seeks to dismiss Kamara's theory of pregnancy-based discrimination only. (*See* Def.'s Reply Br. 2 n.1; Def.'s Moving Br. 4 ("Wayfair now moves to partially dismiss Kamara's Amended Complaint . . . .").) The Court thus cabins its analysis to Kamara's pregnancy claims under Title VII and NJ LAD.

---

[3] Kamara amended her original complaint in June 2021.

II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[4] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, courts must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Courts, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[4] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

### III.   DISCUSSION

The Court begins by noting that claims under Title VII and NJ LAD "are analyzed under the same standard." *Barnes v. Off. Depot, Inc.*, No. 08-1703, 2009 WL 4133563, at *5 (D.N.J. Nov. 24, 2009) (listing cases); *see also Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 311 (3d Cir. 2005) ("Title VII analysis applies to claims brought under the NJLAD . . . ." (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1212 (3d Cir. 1995))). The Court further notes that Kamara appears to allege three distinct theories of pregnancy-based employment discrimination: disparate treatment, retaliation, and hostile work environment. (*See generally* Am. Compl.) Although Wayfair's Motion is unclear as to which theories the Court should consider, the Court assumes Wayfair is moving to dismiss all three.

Regardless of the theory, the parties focus on two questions about the adequacy of the Amended Complaint: (1) whether it alleges sufficient facts relating the adverse employment actions to Kamara's pregnancy and subsequent complaints about harassment; and (2) whether it sufficiently alleges severe or pervasive harassment. In answering these questions, the Court is mindful that employment discrimination cases are often poor candidates for premature dismissal. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008) ("Summary judgment is to be used sparingly in employment discrimination cases, especially where, as here, we are viewing the case at first glance. . . . [T]he plaintiff's burden at this first stage is not particularly onerous . . . ."); *Bowles v. City of Camden*, 993 F. Supp. 255, 264 (D.N.J. 1998) ("The initial burden of making a prima facie case is relatively easy to meet." (citations omitted)). The Court now addresses each question, using the relevant Title VII standard.

Starting with the first question, the Court finds that the Amended Complaint alleges a sufficient nexus between the adverse employment actions and Kamara's pregnancy and harassment complaints. This nexus prong is pertinent to two of Kamara's theories. Under her

disparate-treatment theory, Kamara must allege "some nexus between her pregnancy and the adverse employment action," often through "evidence . . . that [the plaintiff] was treated less favorably than similarly situated employees who are not in plaintiff's protected class." *Doe*, 527 F.3d at 365-66 (citations omitted). Similarly, under her retaliation theory, Kamara must allege "a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

Under either theory, the Amended Complaint sufficiently alleges a nexus. It alleges four distinct adverse employment actions—failure to promote, failure to accommodate, baseless write-ups, and termination. (*See* Am. Compl. ¶ 84.) All four occurred within three months after Kamara informed Wayfair that she was pregnant, and the write-ups occurred within an even shorter period after Kamara complained about Haymen's accommodation revocation. (*See id.* ¶¶ 37, 41, 51, 60, 64, 71.) Similarly, taking all inferences in favor of Kamara, the Amended Complaint alleges a pattern of antagonism because it alleges that Kamara was baselessly written up twice after she complained. (*See id.* ¶¶ 60-65; *Jankowski v. Sage Corp.*, No. 08-770, 2010 WL 1253544, at *4 (W.D. Pa. Feb. 23, 2010) (finding causal connection where, "[i]n the two months between [p]laintiff's complaint and termination, [d]efendant issued to [p]laintiff three written warnings within thirty days of one another"), *adopted by* 2010 WL 1253542 (Mar. 24, 2010).) The Amended Complaint also sufficiently alleges that Wayfair treated Kamara worse than non-pregnant employees. *See Doe*, 527 F.3d at 366 ("Although we have held that '[Title VII] does not require that employers treat pregnant employees better than other temporarily disabled employees,' [Title VII] does require that employers treat pregnant employees no worse." (quoting *In re Carnegie Ctr. Assocs.*, 129 F.3d 290, 295 (3d Cir. 1997))). For example, the Amended Complaint alleges that Wayfair promoted a less-qualified employee (Haymen) while not allowing Kamara to apply for

the same promotion. (Am. Compl. ¶¶ 41, 46.) It further alleges that non-pregnant employees did not receive baseless write-ups for lateness. (*Id.* ¶ 84.) Thus, at this early stage, Kamara's Amended Complaint alleges enough to survive a motion to dismiss.

Turning to the second question, the Court concludes that the Amended Complaint sufficiently alleges severe or pervasive harassment. To start, hostile work environment claims require this element. *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (citations omitted). The Third Circuit instructs that severe or pervasive conduct "requires conduct that is sufficient 'to alter the conditions of [the employee's] employment and create an abusive working environment.'" *Id.* at 214 (alteration in original) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Courts must judge this conduct "by looking at all the circumstances," including the frequency, severity, humiliating and threatening nature, and the interference caused by the conduct. *Id.* at 215 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)). Here, taking all inferences in favor of Kamara, the Amended Complaint alleges sufficient severe or pervasive conduct. As stated before, over the course of three months, Wayfair and its employees did not allow Kamara to apply for a promotion, revoked her light-duty accommodation, twice wrote her up, and ultimately fired her. The Court also rejects Wayfair's argument that it should consider only the revocation in its severe or pervasive analysis because it looks to "all the circumstances"—not just isolated incidents of discrimination. *See id.*; *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario."). At this stage, the Court finds that these allegations suffice for a hostile-work-environment claim.

## IV. CONCLUSION

The Court holds that Kamara has plausibly alleged claims for pregnancy discrimination under Title VII and NJ LAD. Accordingly, it denies Wayfair's Motion. The Court will issue an order accompanying this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE